Rodríguez Muñiz, Juez Ponente
*669 TEXTO COMPLETO DE LA SENTENCIA
El Plan de Salud U.I.A., Inc. (en adelante, el “Plan de Salud') presentó recurso de revisión el 7 de enero de 2004. Solicitó la revisión de una determinación emitida por la Oficina del Comisionado de Seguros (en adelante, la “OCS”) el 21 de agosto de 2003, notificada en esa misma fecha. Mediante la misma, se le imputaron al Plan de Salud cuatro (4) violaciones al Código de Seguros de Puerto Rico y se le impuso una multa por la cantidad de cinco mil doscientos dólares ($5,200.00).
El 9 de septiembre de 2003, el Plan de Salud presentó Moción de Reconsideración, la cual fue acogida por la OCS el 11 de septiembre de 2003.
El 5 de diciembre de 2003, notificada el 8 de diciembre de 2003, la OCS emitió Resolución En Reconsideración en la que declaró “sin lugar” la solicitud de reconsideración presentada por la Organización.
A continuación expondremos el trasfondo fáctico y procesal del caso.
I
El 21 de junio de 2001, la OCS emitió una Orden de Investigación para examinar la situación financiera y las operaciones del Plan de Salud, el cual provee servicios a los empleados de la Unión Independiente Auténtica de la Autoridad de Acueductos y Alcantarillados (en adelante, la “A.A.A.”). 
Luego de efectuada la investigación, el 17 de diciembre de 2001, la OCS le notificó al Plan de Salud el Informe de Examen realizado y le apercibió del derecho que tenía para presentar las objeciones al mismo. Entre los señalamientos reflejados en el informe, en lo pertinente, se desprende las siguientes violaciones a las disposiciones del Código de Seguros de Puerto Rico:

“9. La Organización actuó contrario al Artículo 19.080(1)(b)(c) del Código de Seguros de Puerto Rico, ya que entre la evidencia de cubierta y el folleto informativo que se le provee a los empleados de la AAA existían diferencias. Página 7.

10. La Organización actuó contrario al Artículo 19.080(1)(b)(c)del Código de Seguros de Puerto Rico, ya que entre la evidencia de cubierta y el folleto informativo que se le provee a los empleados jubilados de la AAA existían diferencias. Página 7.

11. La Organización actuó contrario al Artículo 19.080(1)(c)(A) y al Artículo 19.150(l)(a) del Código de Seguros de Puerto Rico, ya que la evidencia de cubierta y el boletín informativo entregado a los empleados jubilados de la AAA no indican cuáles son las normas establecidas por la Organización para la cubierta de los servicios recibidos en los Centros de Cirugía Ambulatoria. Página 7.

12. La Organización actuó contrario al Artículo 19.150(4) del Código de Seguros de Puerto Rico al utilizar en varias ocasiones las palabras seguro y aseguradores (sic) la Evidencia de Cubierta de los Jubilados de AAA y el boletín informativo que se le entregue a los suscriptores. Página 8.

13. La Organización actuó contrario a lo dispuesto en el Artículo 19.080(2) del Código de Seguros de Puerto Rico al utilizar tarifas fuera de las aprobadas por la Oficina del Comisionado de Seguros. Página 8.

14. Se encontró que los miembros del Comité de Querellas pertenecen a dicho Comité desde el 1995, o sea por un período de seis años consecutivos contrario al Artículo 19.120(b) del Código de Seguros de Puerto Rico. Página 9.

*670
15. El procedimiento para la tramitación de querellas utilizado por la Organización durante el período investigado, no está conforme con lo que dispone el Artículo 19.120(c) del Código de Seguros de Puerto Rico. Páginas 9 y 10.

16. La Organización deberá enmendar el Procedimiento para la Tramitación de Querella, para que éste indique que todas las querellas suscritas recibidas deberán ser radicadas ante el Comité de Querellas, el cual debe contestar las mismas conforme lo dispone el Artículo 19.120(c) del Código de Seguros de Puerto Rico. La enmienda realizada debe ser sometida a la Oficina del Comisionado de Seguros. Página 10.

17. La Organización pagó a la Unión Independiente Auténtica de los Empleados Autoridad de Acueductos y Alcantarillados durante el año 2000, gastos de administración de $940,864 por los servicios que le presta al Plan de Salud U.I.A., Inc. a través de su infraestructura. Páginas 10 y 11.

18. La Organización actuó contrario al Artículo 19.050(2)(a) del Código de Seguros de Puerto Rico al tener a la Unión Independiente Auténtica de los Empleados de la AAA llevando en su nombre ciertas funciones tales como mercadeo, consultorio y administración sin haber notificado y suministrado al Comisionado la información adecuada que justifique el ejercicio de dichos poderes. Página 11.

19. Se requiere a la Organización desista de seguir llevando a cabo esta práctica sin haber obtenido aprobación de la Oficina del Comisionado de Seguros conforme lo establece el Artículo 19.050(2)(a) del Código de Seguros de Puerto Rico. Página 11.

20. La Organización pagó los gastos de seguridad del edificio, luz, agua, recogido de basura, mantenimiento de ascensor y mantenimiento de aire acondicionados cuando estos gastos debieron estar incluidos en los gastos de infraestructura o debieran ser compartidos con la Unión Independiente Auténtica de los Empelados de la AAA, ya que ambos tienen sus oficinas en el mismo edificio. Página 12.

21. Se recomienda a la Organización contrate una persona con conocimiento en contabilidad de planes médicos para que lleve a cabo las funciones de contabilidad de la Organización o que contrate una firma de contadores públicos autorizados que no sea el Sr. Rubén Luciano para que certifique los estados financieros. Página 13.

22. Los directores de la Organización actuaron contrario al Artículo 19.070 del Código de Seguros. ” 
El 23 de enero de 2002, el Plan de Salud sometió sus objeciones con relación a los señalamientos del informe de examen.
Posteriormente, el 28 de febrero de 2002, el Oficial Examinador de la OCS emitió un Aviso de Vista y Señalamiento en atención a las objeciones presentadas por el Plan de Salud. Mediante el mismo, se señaló una vista administrativa en el caso de epígrafe para el 2 de abril de 2002 y se le solicitó a las partes que se reunieran a los fines de elaborar un Informe de Conferencia con Antelación a la Vista para simplificar los asuntos en controversia.
El 2 de abril de 2002, las partes presentaron Informe de Conferencia Entre las Partes. En lo pertinente, llegaron a los siguientes acuerdos en cuanto a las violaciones al Código de Seguros de Puerto Rico que se le imputaron al Plan de Salud:

“9. La Organización acogió el señalamiento del Comisionado de Seguros.

10. La Organización acogió el señalamiento del Comisionado de Seguros.

*671
11. La Organización acogió el señalamiento del Comisionado de Seguros.

12. La Organización acogió el señalamiento del Comisionado de Seguros.

13. La Organización acogió el señalamiento del Comisionado de Seguros y se compromete a informar a esta Oficina sobre cualquier cambio.

14. La organización sometió evidencia que lo corrigió.

15. La organización sometió evidencia que lo corrigió.

16. La organización sometió evidencia que lo corrigió.

17. La Organización sometió el contrato y el mismo está siendo evaluado por la Oficina del Comisionado de Seguros.

18. La Organización sometió el contrato y el mismo está siendo evaluado por la Oficina del Comisionado de Seguros.

19. La Organización sometió el contrato y el mismo está siendo evaluado por la Oficina del Comisionado de Seguros.

20. La Organización sometió el contrato y el mismo está siendo evaluado por la Oficina del Comisionado de Seguros.

21. La Organización sometió el contrato y el mismo está siendo evaluado por la Oficina del Comisionado de Seguros.

22. La Organización informa que se designó como director del Departamento de Contabilidad y Finanzas al Sr. Andrés Carrasquilla. ” 

Posteriormente, el 13 de agosto de 2003, la OCS presentó Moción Informativa en la que notificó que las partes habían llegado a un acuerdo en cuanto a tres controversias que quedaban pendientes por dilucidar. Dichos acuerdos fueron recopilados en un Informe de Examen Enmendado. Así, pues, el caso quedó sometido para adjudicación.
El 21 de agosto de 2003, el Oficial Examinador de la OCS emitió Resolución en el caso de epígrafe. Mediante la misma, la OCS acogió las estipulaciones presentadas por las partes y le impuso al Plan de Salud el cumplimiento de ciertos requerimientos a los fines de corregir los señalamientos que le hizo dicho organismo. También se le impuso al Plan de Salud una multa administrativa por la cantidad de cinco mil doscientos dólares ($5,200.00), que se desglosa de la siguiente forma:

“1. $500por incurrir en dos violaciones a los Artículos 19.080(1)(b) y (c) del Código de Seguros de Puerto Rico, 26 L.P.R.A. see. 1908 (l)(b) y (c), al incluir en el folleto informativo distribuidos a los empleados y empleados-jubilados una cubierta diferente a la de cubierta aprobada por la Oficina del Comisionado de Seguros de Puerto Rico.

2. $200 por violar el Artículo 19.150(4) del Código de Seguros de Puerto Rico, 26 L.P.R.A. see. 1915(4), al utilizar en varias ocasiones la palabra “seguro” y “asegurador” en la Evidencia de Cubierta de los Jubilados de la AAA y en el boletín informativo que la Organización le entrega a sus suscriptores.

*672 ¡ 3. $2,000 por infringir el Artículo 19.080(2) del Código de Seguros de Puerto Rico, 26 L.P.R.A. see. 1908 1(2). Como atenuante se tomó en consideración que del informe de examen no surge un cuadro completo de los hechos que constituyen la violación al Artículo 19.080(2), supra, por lo que no se nos colocó en posición de hacer una determinación precisa en cuanto a la severidad de la violación y el grado de responsabilidad de la Organización al facturar una tarifa diferente a la aprobada por la Oficina del Comisionado de Seguros.

J. $2,500por incurrir en violación al Artículo 19.070 del Código de Seguros, 26 L.P.R.A. see. 1907, el cual le impone a los directores un deber defiducia con relación al manejo de los fondos de la organización... ”. 

El 9 de septiembre de 2003, el Plan de Salud presentó Moción de Reconsideración. En la misma, aceptó la imposición de las sanciones consignadas en los incisos (1) y (2). Mientras que solicitó la reconsideración de las sanciones impuestas en los incisos (3) y (4) bajo el fundamento de que las mismas resultaban ser improcedentes conforme a derecho y contrarias a la prueba desfilada.
Mediante Resolución Interlocutoria Post Resolución de 11 de septiembre de 2003, la OCS acogió la solicitud de reconsideración presentada por el Plan de Salud.
Luego de varios trámites procesales interlocutorios, el 5 de diciembre de 2003, notificada el 8 de diciembre de 2003, la OCS emitió Resolución en Reconsideración en la que declaró “sin lugar''’ la solicitud de reconsideración. La OCS fundamentó su decisión en que el Plan de Salud había aceptado todas las violaciones al Código de Seguros de Puerto Rico que le habían sido imputadas en el Informe de Examen, por lo que las mismas se entendían probadas. Añadió que los acuerdos alcanzados por las partes tenían el alcance de una adjudicación en cuanto a dichas violaciones, lo cual hacía innecesario la presentación de prueba. También señaló que ninguna de las partes impugnó la validez de dichos acuerdos durante el proceso administrativo.
n
Inconforme con dicha determinación, el Plan de Salud recurre ante nos y señala comisión de los siguientes errores:

“1. ERRÓ LA OFICINA DEL COMISIONADO DE SEGUROS AL SOSTENER JURÍDICAMENTE QUE LA ORGANIZACIÓN HABÍA ACEPTADO LAS FALTAS QUE MOTIVARON LAS MULTAS IMPUESTAS EN EL ASUNTO DEL PRESENTE RECURSO.

2. ERRÓ LA OFICINA DEL COMISIONADO DE SEGUROS AL SOSTENER QUE LOS HECHOS IMPUTADOS Y QUE CONSTITUYERON LA VIOLACIÓN QUE SE IMPUTA EN EL PÁRRAFO TERCERO DE LA PÁGINA CUATRO (4) DE SU RESOLUCIÓN SE DESPRENDE QUE EL CUADRO DE HECHOS QUE CONTIENE EL INFORME DE EXAMEN Y QUE DIO MOTIVO A LA ALEGADA VIOLACIÓN NO CONTENÍA UN CUADRO COMPLETO, COMO PARA IMPUTAR LA MISMA Y POR LO TANTO, SE PUDIERA IMPUTAR UNA VIOLACIÓN AL ARTÍCULO 19.080(2) DEL CÓDIGO DE SEGUROS DE PUERTO RICO.

3. ERRÓ LA OFICINA DEL COMISIONADO DE SEGUROS AL SOSTENER QUE LOS HECHOS IMPUTADOS Y QUE CONSTITUYERON LA VIOLACIÓN QUE SE IMPUTA EN EL PÁRRAFO CUARTO, PÁGINA CUATRO DE SU RESOLUCIÓN, CUANDO QUEDÓ CLARAMENTE DEMOSTRADO QUE DICHOS ACTOS EN FORMA ALGUNA CONSTITUYEN UNA VIOLACIÓN AL ARTÍCULO 19.070 DEL CÓDIGO DE SEGUROS DE PUERTO RICO. ”

m
El Tribunal Supremo ha enfatizado que el negocio y la industria de seguros están revestidos de profundas consideraciones de política pública, por cuya razón el Estado los reglamenta minuciosamente. Assoc. Ins. *673 Agencies Inc. v. Com. Seg. de P.R., 145 D.P.R. 425 (1997). Con el propósito de fiscalizar cuidadosamente este sector, se creó el cargo de Comisionado de Seguros y se le confirieron amplios poderes de reglamentación, investigación y adjudicación de controversias. Esto impone una seria responsabilidad al Comisionado de velar porque se cumplan estrictamente las normas y principios del Código de Seguros de Puerto Rico. Comisionado de Seguros v. Anglo Porto Rican, 97 D.P.R. 637, 641 (1969). La legislatura delegó y asignó al Comisionado los poderes necesarios a 'estos efectos, incluyendo la facultad de evaluar las operaciones y finanzas de los seguros de salud.
En Puerto Rico, toda persona que desee establecer u operar una organización de servicios de salud deberá obtener una autorización otorgada por el Comisionado, quien mantendrá jurisdicción sobre dicha entidad para examinar e investigar sus operaciones. A tales efectos, el Artículo 1903 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 1903a, dispone lo siguiente:

“(1) Independientemente de cualquier otra disposición de ley, y excepto como se provee más adelante, toda persona, entidad u organización que provea en Puerto Rico cubierta de clase alguna sobre una base prepagada por gastos por servicios médico-quirúrgicos, quiroprácticos, terapia física, patología del habla, audiología, salud mental, servicios dentales, hospitalización, laboratorios, optometría o cualquier otro servicio relacionado con el cuidado de la salud, se presumirá que está sujeto a la jurisdicción y reglamentación del Comisionado, salvo que la persona, entidad u organización, demuestre que al proveer tales servicios está sujeta a la jurisdicción y reglamentación de otra agencia, departamento o instrumentalidad pública del Estado Libre Asociado de Puerto Rico o cualquiera de sus subdivisiones o del Gobierno de los Estados Unidos de América, mediante la presentación del certificado de autoridad, licencia o documento expedido por la agencia gubernamental concernida que la autoriza o cualifica para proveer tales servicios de cuidado de salud sobre una base prepagada.

(2) El Comisionado podrá examinar e investigar a las personas, entidades y organizaciones antes descritas, excepto aquéllas que demuestren estar exentas, según dispone esta sección, con el propósito de determinar su organización y solvencia, así como el cumplimiento de las disposiciones de este título. ” (Énfasis nuestro.)
El Artículo 19.050 del Código de Seguros de Puerto Rico, 26 L.P.R.A. see. 1905, dispone sobre los diferentes poderes que se le han conferido a las organizaciones de salud:

“(1) Los poderes de una organización de servicios de salud incluirán, pero no estarán limitados a:

(a) La compra, arrendamiento, construcción, renovación, operación, mantenimiento de hospitales, facilidades médicas, o ambos, y equipo relacionado y aquella propiedad que razonablemente se pueda requerir para su oficina principal o para aquellos otros propósitos que sean necesarios para la organización.

(b) Conceder préstamos a grupos médicos bajo contrato con la organización para asistirla exclusivamente en aquellos programas que estén relacionados con el contrato; o conceder préstamos a una corporación o corporaciones bajo su control con el propósito de adquirir o construir facilidades médicas y hospitalarias o que la asistan en su programa para proveer servicios de cuidado de salud a los suscriptores.

(c) Ofrecer servicios de cuidado de salud a través de proveedores que estén bajo contrato con, o empleados por la organización de servicios de salud.

(d) Contratar con cualquier persona para llevar a cabo en su nombre ciertas funciones, tales como mercadeo, suscripción y administración.

*674
(e) Contratar con una compañía de seguros o con otra organización de servicios de salud autorizada en Puerto Rico, con el fin de proveer seguros, indemnización o reembolso por los costos de los servicios de cuidado de salud ofrecidos por la organización de servicios de salud.

(f) Ofrecer otros servicios de cuidado de salud, además de los servicios básicos de cuidado de salud. ” (Énfasis nuestro.)
Conforme a la disposición anterior, las organizaciones de servicios de salud podrán contratar con terceras personas para que lleven a cabo en su nombre funciones de mercadeo, suscripción y administración. En el caso particular de las funciones de administración, las organizaciones de servicios de salud tienen el deber de notificar al Comisionado la información adecuada que justifique el ejercicio de dichos poderes. El Comisionado podrá desaprobar el ejercicio de dicho poder si en su criterio afectaran sustancialmente la situación económica de la organización de servicios de salud e impedirán que cumplan con sus obligaciones. Si transcurren treinta (30) días desde la presentación de la información sobre el poder de administración sin que el Comisionado de Seguros lo desapruebe, se considerará aprobado. No obstante, el Comisionado de Seguros podrá prorrogar dicho período por un término adicional que no excederá de treinta (30) días, siempre y cuando el Comisionado de Seguros le notifique a la organización de servicios de salud dentro de dicho período de espera.
El Artículo 19.070 del Código de Seguros de Puerto Rico, 26 L.P.R.A. see. 1907, le impone a los directores, oficiales o socios de una organización de servicios de salud, un deber fiduciario en cuanto a los fondos recibidos de los suscriptores. A esos fines, la aludida disposición lee de la siguiente forma:

“Cualquier director, oficial o socio de una organización de servicios de salud que reciba, recaude, desembolse o invierta fondos relacionados con las actividades de dicha organización, será fiduciariamente responsable por los fondos recibidos de los suscriptores. ”

De otra parte, toda organización de servicios de salud tiene que presentar ante el Comisionado de Seguros el formulario de evidencia de cubierta o la enmienda a los mismos para su aprobación. La evidencia de cubierta debe contener disposiciones que no sean inciertas, injustas, discriminatorias, engañosas, desleales, o que conduzcan a falsas representaciones. Además, se debe incluir una relación completa del contrato, o un resumen si se trata de un certificado.
El Código de Seguros de Puerto Rico en el Artículo 19.015, 26 L.P.R.A. see. 1915, establece aquellas prácticas que se consideran prohibidas en cuanto a la evidencia de cubierta que presentan las organizaciones de servicios de salud. El mismo dispone lo siguiente:

“(1) Ninguna organización de servicios de salud o su representante podrá usar o permitir el uso de anuncios inciertos o engañosos, solicitudes que sean inciertas o engañosas o cualquier formulario de evidencia de cubierta que sea engañosa. Para propósitos de este Capítulo:

(a) Una declaración o artículo informativo puede ser considerada como incierta si la misma no corresponde a hechos que son o pueden ser significativos para el suscriptor o persona que interese acogerse a un plan de servicios de cuidado de salud.

(b) Una declaración o artículo informativo se considerará incierta si en el contexto total en donde se hace dicha declaración o artículo puede ser entendido por una persona que no posea conocimiento especial sobre planes de salud como que indica cualquier beneficio o ventaja, o la ausencia de cualquier exclusión, limitación o desventaja que pueda ser significativa para un suscriptor o persona que esté considerando suscribirse en un plan, cuando de hecho no existe la ausencia de limitaciones, exclusiones o desventajas.

*675
1(c) La evidencia de cubierta se considerará como engañosa si en su totalidad, y tomando en consideración la tipografía y el formato, así como el lenguaje, le hace creer a una persona, que no posea conocimiento especializado sobre planes y evidencia de cubierta, que tiene beneficios, servicios, cargos u otras ventajas los cuales no surgen de la evidencia de cubierta o Ips cuales no son accesibles regularmente para los suscriptores bajo el plan de cuidado de salud que emite dicha evidencia de cubierta.

(2)Las disposiciones de este título sobre prácticas desleales serán interpretadas para que apliquen a las organizaciones de servicios de salud, plan de cuidado de salud y evidencia de cubierta, hasta el límite que el Comisionado determine que las mismas les son aplicables a la organización de servicios de salud, planes de cuidado de salud y evidencia de cubierta.

(3)No se podrá cancelar, modificar o renovar la evidencia de cubierta a un suscriptor, excepto por la falta de pago de las tarifas para la cubierta, o por otras razones que determine el Comisionado, entendiéndose que existirá un período de gracia de treinta (30) días para realizar el pago.

(4)Ninguna organización de servicios de salud puede usar en su nombre, contrato o literatura, ninguna de las palabras "seguro", "contingencia", "garantía", "mutua" o cualquier otra palabra descriptiva de seguro, contingencia o negocio de garantía o engañosamente similar al nombre o descripción de cualquier corporación de seguros o garantía que haga negocios en Puerto Rico.

(5)Ningún proveedor podrá contratar la provisión de servicios de cuidado de salud con una organización de servicios de salud, a menos que ésta esté autorizada conforme a lo requerido por este Capítulo.

(6)Ninguna póliza de seguros de servicios de salud, ni ningún plan de cuidado de salud que ofrezca cubierta para los hijos en una unidad familiar, podrá excluir hijos de crianza de dicha unidad familiar. Para fines de esta disposición, el término "hijos de crianza" tendrá el significado que se establece en la see. 1633 de este título. ”

Otro requisito que le impone el Código de Seguros a toda organización de servicios de salud es inscribir ante el Comisionado de Seguros las tarifas a ser utilizadas con cualquier plan de cuidado de salud. Dichas ' tarifas deberán ser establecidas de acuerdo con los principios actuariales para varias categorías de suscritores y no serán excesivas, inadecuadas o discriminatorias. 
IV
Como es sabido, la aplicación e interpretación administrativa de una ley por los organismos encargados de ponerla en vigor merece gran consideración y respeto por los tribunales, en vista de la experiencia y conocimiento que éstos tienen sobre las materias que le han sido encomendadas. Pacheco Torres v. Estancias de Yauco, S.E., 160 D.P.R. _, 2003 J.T.S. 150, a las páginas 210-211, Opinión de 30 de septiembre de 2003; Rodríguez v. Méndez & Co., 147 D.P.R. 734, 744-745 (1999). Por ello, los tribunales no debemos intervenir en sus determinaciones más allá de lo que sea realmente necesario.
Nuestro ordenamiento jurídico le ha concedido a las decisiones administrativas una presunción de regularidad y corrección. La persona que desee derrotar dicha presunción deberá presentar evidencia suficiente y no meras alegaciones. Pacheco Torres v. Estancias de Yauco, S.E., supra, a las páginas 210-211; Comité de Vecinos Pro-Mejoras, Inc. v. Junta de Planificación, 147 D.P.R. 750, 761 (1999).
“El alcance de la revisión judicial comprende tres áreas. Ellas son: (1) Concesión del remedio apropiado, (2) Revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial, y (3) Revisión completa y absoluta de las conclusiones de derecho. ” Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Bogotá, Forum, 2001, a la página 534.
*676 La función revisora del tribunal, aunque restringida, tiene como propósito determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que abusó de su discreción. Municipio de San Juan v. Junta de Calidad Ambiental, 149 D.P.R. 263, 280 (1999); T-JAC Inc. v. Caguas Centrum Limited, 148 D.P.R. 70, 80-81 (1999).
Este ejercicio por parte del tribunal está enmarcado en dos principios fundamentales. “Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo”. Sin embargo, “[l]as conclusiones de derecho serán revisadas en todos sus aspectos por el tribunal”. 
El criterio rector en la revisión judicial de una determinación de hechos de una agencia es la existencia de evidencia sustancial. A estos fines, se ha definido evidencia sustancial como “aquella [evidencia] pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión”. Ramírez v. Departamento de Salud, 147 D.P.R. 901, 905 (1999); Associated Insurance v. Comisionado de Seguros, 144 D. P.R. 425, 437 (1997). Se ha reconocido la norma jurisprudencial de que, de ordinario, los tribunales no intervendrán en las determinaciones de hechos de las agencias, mientras exista evidencia sustancial en apoyo de las mismas. Oficina de Etica Gubernamental v. Rodríguez Martínez, 159 D.P.R._, 2003 J.T.S. 51, a la página 795, Opinión de 1 de abril de 2003. Dicha norma persigue evitar que los tribunales sustituyan el criterio de la agencia en asuntos enmarcados en su destreza y especialización por el criterio del tribunal revisor.
Para sostener la posición de que no existe evidencia sustancial que apoye las determinaciones de la agencia administrativa, la parte afectada debe demostrar que existe “otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda concienzudamente concluir que la evidencia sea sustancial, en vista de la prueba presentada... y hasta el punto que se demuestre claramente que la decisión [de la agencia] no está justificada por una evaluación justa del peso de la prueba”. Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995).
En cuanto a las determinaciones de derecho de la agencia, el tribunal podrá revisarlas en todos sus aspectos, aunque, como expresáramos anteriormente, observando un nivel de deferencia por el criterio de la agencia en aquella legislación que ésta implanta. Puerto Rico Telephone Co. v. Junta, 151 D.P.R._, 2000 J.T.S. 98, a las páginas 1266-1267, Opinión de 12 de junio de 2000. Esta norma no presupone que el tribunal revisor pueda descartar libremente las interpretaciones o conclusiones de la agencia administrativa, sino que les dará deferencia en la medida que éstas sean razonables. Misión Industrial v. Junta de Planificación, 146 D.P.R. 64, 132-133 (1998). Por lo tanto, el tribunal revisor sostendrá las conclusiones de la agencia mientras las mismas sean cónsonas con el propósito legislativo y no sean arbitrarias, ilegales o irrazonables. T-JAC Inc. v. Caguas Centrum Limited, supra, a las páginas 80-81.
De modo que el Tribunal Supremo en Oficina de Ética Gubernamental v. Rodríguez Martínez, supra, a la página 798, ha expresado:
“Si bien los tribunales les brindan mucha deferencia y respeto a las interpretaciones estatutarias efectuadas por el organismo facultado por ley para velar por su administración y cumplimiento, ello no constituye una norma inflexible que impida la revisión judicial si no existen las condiciones que sostienen tal deferencia. (Citas omitidas.) Cónsono con lo anterior, hemos expresado que ‘la norma de dar deferencia a la interpretación que hace una agencia de la ley o reglamento que está bajo su administración es una de hermenéutica, que de ningún modo afecta el alcance de la facultad de revisión de los tribunales... ”. (Énfasis en el original.)
En aquellos asuntos que puedan ser catalogados como cuestiones mixtas de hechos y de derecho, la norma establecida es que la revisión judicial será análoga a la revisión de asuntos de derecho. Estos asuntos mixtos de *677 hecho y de derecho surgen ordinariamente en ocasiones en las cuales existe confusión en cuanto a la aplicación del derecho a los hechos particulares del caso. Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, supra, a la página 561.
y
En el caso de autos, la OCS realizó una investigación de las operaciones y de la situación financiera del Plan de Salud que comprendía desde el 1 de enero de 1999 hasta el 31 de diciembre de 2000. Como resultado de esta investigación, en lo pertinente, la OCS le hizo varios señalamientos al Plan de Salud los cuales constituían posibles violaciones al Código de Seguros de Puerto Rico. El Plan de Salud acogió dichos señalamientos como parte de los acuerdos a que llegaron las partes en el informe de conferencia que le presentaron al oficial examinador de la OCS.
Luego de los trámites procesales de rigor; la OCS emitió una resolución en la que le imputó al Plan de Salud haber incurrido en cuatro (4) violaciones al Código de Seguros de Puerto Rico y le impuso una multa administrativa ascendente a cinco mil doscientos dólares ($5,200.00).
Mediante el primer señalamiento de error, el Plan de Salud planteó que incidió la OCS al sostener jurídicamente que ésta había aceptado las faltas que motivaron las multas impuestas.
Del expediente surge que el Plan de Salud aceptó haber incurrido en dos (2) de las violaciones del Código de Seguro que le imputó la OCS. Así, pues, aceptó haber incurrido en una violación al Artículo 19.080, incisos (l)(b) y (c) del Código de Seguros de Puerto Rico, 26 L.P.R.A. se. 1908 (l)(b) y (c), por alegadamente haber incluido en el folleto informativo, que le distribuyó a los empelados y empleados-jubilados de la A.A.A., una cubierta diferente a la de cubierta aprobada por el Comisionado de Seguros. También, la organización aceptó haber violado el Artículo 19.150 inciso (4) del Código de Seguros de Puerto Rico, 26 L.P.R.A. see. 1915(4), por haber utilizado en varias ocasiones la palabra “seguro” y “asegurador” en la Evidencia de Cubierta de los empleados-jubilados de la A.A.A. y en el boletín informativo entregado a los suscriptores.
El Plan de Salud, en su escrito de revisión, sostuvo que pagó las multas correspondientes a estas dos (2) violaciones al Código de Seguros de Puerto Rico. Arguye que aceptó las referidas violaciones, a pesar de que entendía que su conducta no constituía una violación al Código de Seguros de Puerto Rico, debido a que es una institución sin fines de lucro que no vende su producto a un público que pudiera ser objeto de una práctica engañosa.
De otra parte, el Plan de Salud adujo que no aceptó las otras dos (2) violaciones que le imputaron por alegadamente haber cobrado una tarifa mayor a la que aprobó el Comisionado de Seguros y por la falta de cumplimiento de la Junta de Directores con el deber fiduciario que le impone el Código de Seguros. Dicha organización argumentó que la OCS ha insistido en que ésta aceptó los hechos imputados en el Informe de Examen, ya que reconoció los señalamientos que contenía el informe como correctos, es decir, que en efecto se llevó a cabo la conducta que allí se indica. Sostuvo que el haber aceptado los señalamientos como tal, no implica en forma alguna que había incurrido en la conducta imputada y que dichos actos violen alguna de las disposiciones del Código de Seguros de Puerto Rico.
Por su parte, la OCS, en síntesis, argumentó que resulta obvio la aceptación por parte del Plan de Salud de los señalamientos incluidos en el Informe de Examen, ya que no se puede sostener que aceptó únicamente la conducta señalada, excluyendo así, la determinación de que violó el Código de Seguros. Añade que el Informe de Examen está dirigido a identificar aquellas transacciones y operaciones que no están conforme con las disposiciones del Código de Seguros de Puerto Rico, lo cual constituye una violación a la ley que implica la imposición de unas sanciones. A tenor con lo anterior*, la OCS argumentó que aceptar el señalamiento que indica el informe de examen constituye necesariamente admitir una violación al Código de Seguros.
*678 Ciertamente, el Plan de Salud en el Informe de Conferencia Entre las Partes mediante un acuerdo acogió los señalamientos que le hizo la OCS. El hecho de que las partes hayan llegado a unos acuerdos con relación a las objeciones al Informe de Examen presentadas por el Plan de Salud y que lo hayan sometido a la OCS no constituye una adjudicación de dichos señalamientos. Ahora bien, no podemos pasar por alto que el Plan de Salud tenía conocimiento de que los hechos que se señalaban en el informe incluían la conclusión de que se habían cometido unas violaciones a las secciones 19.080 (2) y 19.070 del Código de Seguros de Puerto Rico, las cuales eventualmente podían resultar en la imposición de sanciones. En atención a lo expresado, no se cometió el primer señalamiento de error planteado por el Plan de Salud en su escrito de revisión.
Como segundo error, el Plan de Salud alegó que la OCS incidió al sostener que ésta había infringido el Artículo 19.080(2) del Código de Seguros de Puerto Rico, 26 L.P.R.A. see. 1908(2), por alegadamente facturar una tarifa diferente a la aprobada por el Comisionado de Seguros, cuando de la resolución se desprende que no surge un cuadro completo de los hechos que constituyen la violación a la aludida disposición. Argumentó que la OCS abusó de su discreción al imponer la multa, ya que se basó en una situación de hechos que no tenía clara y de la cual resultaba improcedente aplicar la disposiciones del Código de Seguros. Explicó que su organización, por ser una sin fines de lucro, no está sujeta a la fijación de una tarifa, debido a que a no ofrece su plan de salud al público. Añadió que en su caso la tarifa dependía de la cantidad que se obtuviera como parte del convenio colectivo en las negociaciones con el patrono, por lo que la aportación cambiaría periódicamente.
Mientras que la OCS, en síntesis, planteó que el Plan de Salud es una organización de servicios de salud , debidamente autorizada por el Comisionado de Seguros y que tiene que inscribir previamente las tarifas que ha de utilizar en su plan de salud. Añadió que el Código de Seguros no distingue entre las organizaciones con o sin fines de lucro, por lo que todas deben cumplir con las disposiciones del Código de Seguros de Puerto Rico.
De los autos del caso, surge que en el 1994, el Plan de Salud sometió a la OCS para su aprobación una tarifa de doscientos catorce dólares ($214.00). Mientras que del informe de examen emitido por la OCS, surge que el Plan de Salud utilizó una tarifa de doscientos treinta cuatro dólares ($234.00) por unionado. En el Recurso de Revisión, el Plan de Salud aceptó que recibió de la Unión dinero en exceso del estipulado para la tarifa por asegurado alegadamente fijada por la OCS. 
Según ya indicáramos, en Puerto Rico, toda organización de servicios de salud debe obtener una autorización del Comisionado de Seguros para proveer uno o más planes de cuidado de salud. Así, pues, esa organización estará sujeta a la jurisdicción y reglamentación del Comisionado de Seguros. A estas organizaciones de servicios de salud, el Código de Seguros de Puerto Rico les impone el requisito de inscribir ante el Comisionado de Seguros las tarifas que utilizará con el plan de cuidado de salud que ofrezca. Las mismas deberán ser establecidas de acuerdo con los principios actuariales para varias categorías de suscriptores.
Conforme a lo anterior, entendemos que el Plan de Salud, como toda organización autorizada por la OCS y bajo su jurisdicción, tenía el deber de presentar ante el Comisionado de Seguros las tarifas que habría de utilizar en el plan de salud. De igual forma, debió informar sobre su cambio en tarifa a los fines de que fuera aprobado por la OCS. Por otro lado, el Plan de Salud cuestionó el alegado abuso de discreción por parte de la OCS al imponerle una multa sin tener un cuadro completo de los hechos que constituían la violación al Código de Seguros. Del expediente ante nos, surge que en la “Resolución en Reconsideración” emitida por la OCS el 5 de diciembre de 2003, se aclaró el alcance de dichas expresiones. A tales efectos, el oficial examinador expuso que la necesidad de tener un cuadro completo de los hechos era con el propósito de poder imponer una multa proporcional a la violación incurrida, es decir, de acuerdo a la frecuencia en que el Plan de Salud incurrió en la conducta. Resolvemos, por lo tanto, que no se cometió el error alegado.
En cuanto al tercer señalamiento de error, el Plan de Salud alegó que la OCS incidió al imputarle una violación al Artículo 19.070 del Código de Seguros de Puerto Rico, cuando quedó probado que los actos que *679 dan base a dicha imputación no constituian una violación a la referida disposición.
Del Informe de Examen emitido por la OCS, surge que el Plan de Salud pagó a la Unión Independiente Auténtica de los Empleados de la Autoridad de Acueductos y Alcantarillados la cantidad de novecientos cuarenta mil ochocientos sesenta y cuatro dólares ($940,864.00) por concepto de gastos de administración correspondientes al año 2000. La OCS. indicó que la Unión, para determinar los gastos de administración mensual, le aplica un cargo del seis por ciento (6%) a los ingresos de las primas mensuales. Además, señaló que entre la Unión y el Plan de Salud no había un contrato de gastos de administración. Además, la OCS le imputó al Plan de Salud el delegar las funciones de mercadeo, consultaría y administración sin haber notificado y suministrado al Comisionado la información adecuada que justificara el ejercicio de dichos poderes. Por otra parte, la OCS señaló que el Plan de Salud reflejó en el informe anual el pago que emitió por concepto de las funciones delegadas como un gasto de renta y no como un gasto de administración. También señaló que el Plan de Salud pagó los gastos de seguridad del edificio, luz, agua, recogido de basura, mantenimiento de ascensor y mantenimiento de aire acondicionados cuando dichos gastos debieron ser incluidos en la partida de gastos por infraestructura y, a su vez, compartidos por ambas organizaciones que comparten oficinas en el mismo edificio. A raíz de estos hallazgos, la OCS determinó que la Junta de Directores del Plan de Salud había infringido el deber fiduciario que le impone el Código de Seguros de Puerto Rico, ya que no ha actuado responsablemente en cuanto a los gastos administrativos de la organización que representan.
El Plan de Salud, en su recurso de revisión, argumentó que, siguiendo las recomendaciones de la OCS, se preparó, redactó y suscribió un contrato, el cual se presentó para su aprobación ante dicho organismo. Sin embargo, la OCS revisó y sugirió unos cambios al referido contrato. Así las cosas, el Plan de Salud alegó que el contrato se sometió ante la OCS hace (2) años sin que el mismo finalmente fuera aprobado. Siendo este el caso, se entendería que dicho contrato quedó aprobado por la OCS, ya que ésta no se expresó al respecto en el término que dispone el Código de Seguros de Puerto Rico.
Sin lugar a dudas, resolver el error señalado por el Plan de Salud requiere determinar si los gastos desembolsados por dicha organización estuvieron conforme a las disposiciones del alegado contrato que se presentó ante la OCS, el cual no fue incluido como parte del expediente. Esto resulta esencial porque de ello depende la determinación de si procede o no imputarle a la Junta de Directores el haber violado el deber de fiducia que le impone el Código de Seguros de Puerto Rico en cuanto al manejo de los fondos de los suscriptores. Por lo tanto, el Plan de Salud no nos pone en condición de determinar si la OCS erró en su determinación.
Es norma establecida en nuestro ordenamiento jurídico que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones administrativas, debido a la experiencia y conocimiento especializado del cual gozan las mismas. En ausencia de un proceder arbitrario, ilegal o irrazonable por parte de la agencia, la decisión administrativa merece nuestra deferencia y respeto.
VI
Por los fundamentos antes expuestos, expedimos el auto y confirmamos la resolución recurrida.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2005 DTA 5
1. El examen de la situación financiera cubría el período de Iro de enero de 1999 al 31 de diciembre de 2000.
*680 2. Véase el Exhibit XIV del Recurso de Revisión, a las páginas 24-29.
3. Véase el Exhibit VII del Recurso de Revisión, Informe de Conferencia Entre las Partes.
4. Del escrito de Revisión surge que el Plan de Salud pagó las multas que corresponden a los incisos (1) y (2).
5. 26 L.P.R.A. see. 201.
6. El Artículo 19.020 del Código de Seguros, 26 L.P.R.A. see. 1902, en su inciso (6) define organizaciones de servicios de salud como sigue:

“Significa cualquier persona que ofrezca o se obligue a proveer a (sic) uno o más planes de salud. ”

7. 26 L.P.R.A. see. 1905.
8 .Id.

9. Id.

10. 26 L.P.R.A. see. 1908 (l)(b).
11. 26 L.P.R.A. see. 1908 (l)(c).
12. 26 L.P.R.A. sec. 1908(2)(a).
13. 26 L.P.R.A. sec. 1908(2)(b).
14. 3 L.P.R.A. see. 2175.
15. Id.
16. Véase la página 5 del Recurso de Revisión.